UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

CAROLYN D. HOLMES,
Plaintiff-Appellant,

v.

No. 98-2013

TOGO D. WEST, Secretary,
Department of the Army,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-95-2760-JFM)

Argued: November 30, 1999

Decided: March 31, 2000

Before WILKINS and NIEMEYER, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge
for the District of South Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Seymour wrote the opinion,
in which Judge Wilkins and Judge Niemeyer joined.

_____

COUNSEL

**ARGUED:** Lawrence Jay Sherman, DESO, THOMAS, SPEVACK &
WEITZMAN, P.C., Washington, D.C., for Appellant. Charles Joseph
Peters, Sr., Assistant United States Attorney, Baltimore, Maryland,
for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attor-
ney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

SEYMOUR, District Judge:

Carolyn D. Holmes brought this action against her former employer, the Department of the Army, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e. She alleged that she was subjected to discrimination on account of her race and gender, and that she ultimately was discharged in retaliation for exercising her rights under Title VII. The district court granted summary judgment in favor of the Department of the Army. Finding no error, we affirm.

I

Holmes, a black female, was employed in 1989 at the Army Research Laboratory (ARL) in Adelphi, Maryland. In 1991, she experienced difficulties with her supervisors and was absent from work for approximately two months with stress-related physical symptoms. She filed an informal Equal Employment Opportunity (EEO) complaint in January 1992 and requested a medical reassignment. Holmes was reassigned to various details on a temporary basis before being reassigned permanently to the Risk Management Division (RMD) of the Operations Directorate (OD) of ARL.

Holmes contends that she was sexually harassed at RMD by Keith Saunders, her immediate supervisor. For example, she claims Saunders once asked her if she went to church regularly, and when she said she did, he asked her why she engaged in premarital sex. She also alleges that a white co-worker, Steve Rock, made a statement to the effect that "dark meat is sweeter than white meat," and that Rock and a female co-worker fondled each other in her presence. Holmes further contends that Saunders called her incompetent in front of other staff members. Holmes reported her complaints to Kevin Kirby, her third line supervisor and Deputy Director of the OD. Holmes then

2

filed a "precomplaint of discrimination" with ARL's EEO Office on March 22, 1994.

Holmes alleges that, while her complaint was being investigated, Saunders deliberately tried to ram her vehicle with his vehicle on April 6, 1994, as she entered the compound where her office was located. She reported this incident as well to the EEO Office, stating that she viewed Saunders's actions as harassment.

On May 24, 1994, another of Holmes's co-workers, Helen Ph-Theodule, got into a verbal altercation with Jeffrey Nelson, Chief of RMD and Holmes's second line supervisor, in Nelson's office. Nelson allegedly tried to strike Ph-Theodule and to block her way as she attempted to leave his office. Nelson allowed Ph-Theodule to pass, after which she left her station to report the incident to the EEO Office. Ph-Theodule never returned to RMD. Instead, she filed a workers' compensation claim on June 22, 1994, alleging stress "due to harassment, intimidation, racial discrimination, & finally physical confrontations by both first and second line supervisors." (J.A. at 944.) Ph-Theodule indicated in the claim that Holmes"will verify latest incident." Id.

In June 1994, Nelson informed Holmes that her job could be at risk because of an upcoming reduction-in-force ("RIF"). Nelson transferred Holmes to the Health Clinic, where she worked for several days before commencing an extended leave of absence on June 24, 1994, purportedly for a recurrence of stress-related symptoms.

On July 14, 1994, Ph-Theodule filed criminal charges against Nelson with respect to the confrontation in his office. Ph-Theodule named Holmes as a witness to the alleged assault. On July 18, 1994, Nelson called Holmes at her residence and asked her to submit a witness statement regarding the Ph-Theodule incident for purposes of completing the workers' compensation claim form. Holmes informed Nelson that she would give a statement only to an EEO investigator.

On July 21, 1994, Sam Shelton, ARL legal counsel, wrote a letter to Holmes indicating that he was looking into Ph-Theodule's criminal complaint against Nelson. Shelton informed Holmes that Ph-Theodule had named her as a witness. Shelton directed Holmes to provide him

3

a detailed statement regarding her knowledge of the incident by August 5, 1994.

On August 5, 1994, Holmes filed criminal charges against Saunders for assault based on his allegedly attempting to collide with her car on April 6, 1994. In her statement in support of the criminal charges, Holmes erroneously recounted the date of the incident as April 14, rather than April 6, 1994. Holmes reported that a security guard, John Shaw, had witnessed the incident.

Holmes sent a facsimile transmission to Kirby, her third line supervisor, on August 19, 1994, in which she offered to give a statement regarding the Ph-Theodule incident to an EEO investigator. On August 22, 1994, Kirby sent a certified letter to Holmes, instructing her to respond to Shelton's letter and warning her that failure to respond to the directive could result in disciplinary action. Holmes sent another facsimile to Kirby on August 30, 1994, informing him that she was in the process of obtaining an attorney. Kirby avers he saw neither of the facsimile transmissions.

Holmes and Ph-Theodule met with Nelson on September 9, 1994, to discuss the possibility of resuming their employment. After the meeting Nelson told Holmes to stop by Shelton's office to pick up some letters he had for her. Holmes told Nelson that Shelton could mail the letters to her.

On September 12, 1994, Nelson asked the ARL Office of Management-Employee Relations (MER) to aid him in filing charges of insubordination against Holmes based on her continuing refusal to provide a statement regarding the Ph-Theodule incident. Kirby made a similar request of MER about the same time.

Holmes retained legal counsel, who made a notice of appearance on September 26, 1994. Holmes filed a Formal Complaint of Discrimination on November 23, 1994, alleging, among other things, reprisal, discriminatory remarks, sexual harassment, demeaning treatment, acts of intimidation, and threat of RIF. An EEO investigator concluded that Holmes had established a prima facie case with respect to some of her claims; however, the investigator ultimately found no evidence to rebut the legitimate, nondiscriminatory reasons offered by

4

Holmes's supervisors to explain the actions of which Holmes complained. Accordingly, the EEO investigator found the Complaint to be without merit.

The criminal charges against Saunders came up for trial on December 14, 1994. Holmes informed the prosecuting attorney that she could not attend because of a family emergency. The prosecuting attorney asked for a continuance, which was denied. The case thereafter was dismissed without prejudice. The charges have not been pursued.

Kirby issued an Advance Notice of Proposed Removal by letter to Holmes dated January 4, 1995. Kirby informed Holmes that he proposed to remove her from federal service for the following reasons:

> 1. Failing to respond to Shelton's letter seeking information regarding the Ph-Theodule incident. According to Kirby, this failure constituted refusal to cooperate in a properly authorized inquiry.

> 2. Failing to respond to Kirby's letter seeking information regarding the Ph-Theodule incident and warning her that disciplinary action could result. According to Kirby, this failure constituted insubordination, failure to follow instructions, and refusal to cooperate in a properly authorized inquiry.

> 3. Refusing to contact Shelton about his letters when directed to do so by Nelson during the September 9, 1994 meeting. According to Kirby, this refusal constituted insubordination, failure to follow instructions, a refusal to cooperate in a properly authorized inquiry.

> 4. Making a false sworn statement regarding Saunders and the alleged vehicular assault and failing to appear at the scheduled trial, at which Saunders, an Assistant United States Attorney, and three other employees did appear. According to Kirby, these actions disrupted normal office operations, damaged the reputation of a supervisor, and harmed office morale.

5

5. Failing to complete certain government-paid training or classes, to turn in grades, and to repay the government, even after repeated requests. According to Kirby, this failure constituted failure to follow instructions.

Kirby informed Holmes that she could respond to the proposed removal and submit documentary evidence in support of her position to Charles Denney, Directorate Executive. On January 23, 1995, Holmes, through counsel, refuted the charges of misconduct in a lengthy writing. She also alleged retaliation and discrimination as affirmative defenses. She contended that Nelson unlawfully attempted to "interrogate" her to deter her from corroborating Ph-Theodule's account of the incident with Nelson, and Kirby then utilized Holmes's refusal to cooperate to justify her discharge. Holmes's counsel also made an oral presentation of Holmes's version of the events to Denney.

By letter dated March 10, 1995, Denney informed Holmes that he had found the charges detailed in the proposed removal to be factually accurate and supported by the evidence. Denney specifically stated:

[1] For purposes of deciding on an appropriate penalty, I consider the charges involving the refusal to respond to Mr. Shelton's request for information, Mr. Kirby's directive to respond to Mr. Shelton's letter, and Mr. Nelson's directive to contact Mr. Shelton to be essentially the same offense repeated three times over a significant period of time. As was brought out by [counsel] in your presentation in response to the proposed removal, you were first asked to provide a statement concerning Ms. Ph-Theodule's allegations by Mr. Nelson in regard to processing paperwork for Ms. Ph-Theodule's workmen's compensation claim. You refused. Mr. Shelton's letter requesting a statement repeated that request, although for a different purpose, and Mr. Kirby's and Mr. Nelson's subsequent directives were all related to your continuing refusal to provide information concerning an alleged assault in the work place. Your refusal directly impacts the ability of this organization to engage in orderly fact finding and

6

properly discipline and protect its employees. I find no excuse for your failure to provide the requested information. Your offense is aggravated by the fact that you were given clear and specific written and oral directives on several occasions and on each occasion you willfully refused to obey. After each directive you had sufficient time to reflect on your behavior and persisted.

[2] I find that you did make false sworn statements to the Prince George's Commissioner against Mr. Keith Saunders, your immediate supervisor and a management official at the Army Research Laboratory. You, through your attorney, claimed that the statement was innocently in error, that the incident actually occurred but on a different date. I have determined that on the date you said the incident described in the statement actually occurred, you were on leave and Mr. Saunders was on temporary duty elsewhere. I conclude that the statement made was knowingly false and not an innocent error. Your false statement directly impacted your ability to work with your supervisor in the future and adversely impacted the reputation of your supervisor and the agency.

(J.A. 371-72.)

Denney concluded that Holmes had failed to fulfill the terms and conditions of employment under which she had been hired and employed. Therefore, he removed her from federal service effective March 10, 1995.

Holmes appealed the decision to the Merit Systems Protection Board. A hearing was held before an Administrative Judge of the Board on June 5-6, 1995. The Administrative Judge upheld the decision in a detailed order filed July 21, 1995.

Holmes next filed a complaint in the Southern Division of Maryland on September 15, 1995. Holmes alleged race and gender discrimination, unlawful termination, and unlawful acts of reprisal and

7

handicap discrimination. The district court granted summary judgment on all claims in favor of the Department of the Army on June 17, 1998.

II

Holmes appeals only the district court's grant of summary judgment with respect to her retaliation claim. The specific question on appeal is whether the district court erred in concluding that Holmes failed to demonstrate that the asserted nonretaliatory reason for her discharge was pretextual. We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing facts and inferences drawn from facts in the light most favorable to the nonmoving party. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc).

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a) (1994); see also 42 U.S.C. § 2000e-16 (1994 & Supp. 1999) (discriminatory practices prohibited with respect to employees of Federal Government). The McDonnell Douglas burden-shifting scheme applies in analyzing retaliation claims under Title VII where, as in this case, there is no direct evidence of retaliation. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985), overruled on other grounds, 490 U.S. 228 (1989). Under the McDonnell Douglas analysis, a plaintiff first must establish a prima facie case of retaliation by demonstrating that (1) she engaged in protected activity, (2) the employer took adverse action, and (3) there was a causal connection between the two. Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998). Once a plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its actions. If the employer succeeds in doing so, the burden shifts back to the plaintiff to establish that the employer's asserted reason is pre-

8

textual. See id. The plaintiff must demonstrate that the employer's proffered reason was mere pretext by showing "both that the reason was false and that [retaliation] was the real reason for the challenged conduct." Jiminez v. Mary Washington College , 57 F.3d 369, 377-78 (4th Cir. 1995) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)); see also Vaughan v. MetraHealth Cos., 145 F.3d 197, 201-02 (4th Cir. 1998).

The district court's order regarding the retaliation claim reads in its entirety as follows:

> Holmes also claims retaliation on the basis of Title VII. In order to recover for retaliation, a plaintiff must demonstrate (1) that she engaged in protected activity; (2) the employer took adverse action, and (3) there was a causal connection between the two. Karpel v. Inova Health Systems , 134 F.3d 1222, 1228 (4th Cir. 1998). It is undisputed that Holmes filed several EEO complaints, both formal and informal prior to her termination. Even if the temporal nexus between her formal complaint in November 1994 and the proposed termination in January 1995 were enough to establish a prima facie case of retaliation, Holmes cannot prevail. ARL has presented evidence that Holmes was removed for disobeying direct orders and for making false statements about her supervisor. Holmes has presented no evidence that ARL's legitimate non-discriminatory explanation for her removal is pretextual.

(J.A. 13.)

Thus, the district court assumed for purposes of analysis that Holmes made out a prima facie case of retaliation, and found that the Department of the Army articulated a legitimate, nonretaliatory reason for her discharge. Therefore, we turn to the question whether Holmes can demonstrate pretext.

A

In attacking the truth of the proffered reason for her discharge, Holmes first contends that the district court erred in failing to recog-

9

nize that "the grounds for termination were inextricably tied to and inseparable from [Holmes's] exercise of legally protected rights in this case." We disagree.

Holmes asserts that she was "well within her rights" in (1) refusing to provide a witness statement except to an EEO investigator; (2) asking for time to retain counsel before providing a statement; and (3) filing a criminal complaint against Saunders. The flaw in Holmes's reasoning, however, is that neither her refusal to participate in the investigation of the Ph-Theodule except on her own terms nor her filing of a criminal complaint against Saunders constituted an activity protected by Title VII. "Protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. See 42 U.S.C. § 2000e-3. The conduct for which Holmes was terminated simply does not fall within the ambit of Title VII. Thus, ARL's decision to terminate Holmes, even if based upon her exercise of legal rights, is not cognizable under section 2000e-3. Cf. Cruz v. Coach Stores, Inc., 2000 WL 122117 (2d Cir. Jan. 20, 2000) (slapping harasser is not a protected activity); Crowley v. Prince George's Co., 890 F.2d 683 (4th Cir. 1989) (investigation of racial harassment by police officers against members of community not protected activity). Holmes has presented no evidence that her filings with the EEO played any part in the decision to discharge her. Accordingly, Holmes's assertion is without merit.

B

Holmes also argues that the district court erred in granting summary judgment because it made credibility and other factual findings that were central to the ultimate determination whether ARL discharged Holmes in retaliation for her exercise of protected rights. We disagree.

Holmes contends that jury issues exist as to whether and to what extent she committed any acts of misconduct, as to what extent ARL "trumped up" the charges against her, and as to the credibility of witness accounts of disputed events. Assuming Holmes's assertions to have merit, they attack only the veracity of ARL's proffered nonretaliatory reason for her discharge. Under the law of this Circuit, however, Holmes also must demonstrate that retaliation was the real

10

reason for her termination. <u>See Vaughan</u>, 145 F.3d at 201-02. Holmes has failed to meet her burden of adducing any evidence from which a reasonable jury could conclude that retaliation was the true reason she was discharged. Accordingly, we affirm the decision of the district court.

<u>AFFIRMED</u>

11